GUILLERMO GONZÁLEZ AGUAYO y su esposa LUZ CARAZO, demandantes y apelantes, *v.* ESTEBAN A. DE GOENAGA, demandado y apelado.

Núm. 6989.—*Sometido:* Febrero 23, 1937. *Resuelto:* Marzo 31, 1937.

*C. del Toro Fernández,* abogado de los apelantes; *Juan B. Soto, Juan F. Soto* y *Enrique Igaravídez,* abogados del apelado.

EL JUEZ ASOCIADO SEÑOR CÓRDOVA DÁVILA emitió la opinión del tribunal.

Guillermo González y su esposa Luz Carazo reclaman de Esteban A. de Goenaga indemnización de daños y perjuicios por incumplimiento de un contrato de subarrendamiento de parte de una casa radicada en la calle José Celso Barbosa. El demandado a su vez solicita como contrademandante la resolución del contrato por no haber los referidos esposos cumplido con las condiciones del mismo.

Alegan los demandantes como causa de acción que el demandado no obstante haberse comprometido a no dedicar ninguna parte del edificio al negocio de cafetín, restaurante, repostería u otro negocio similar, permitió que se abriese al

público en 25 de marzo de 1933, en la planta baja del mismo edificio, otro establecimiento con el nombre de "Fuente de Soda Galiñanes" en el que desde entonces y hasta la fecha se expenden comidas, café, tabacos, cigarrillos, frutas, refrescos y otros artículos similares comprendidos en el negocio de los demandantes. Añaden que con motivo de haberse abierto este otro establecimiento en el local mencionado, los demandantes han sufrido daños y perjuicios ascendentes a la suma de $13,157.81.

El demandado por su parte alega que el local en que se abrió la fuente de soda fué cedido o subarrendado a Galiñanes por otro subarrendatario, Sr. Dinet, quien ocupaba dicho local en virtud de un contrato celebrado con el demandado con anterioridad al que se llevó a efecto con los demandantes y que la obligación contraída por el demandado no puede interpretarse en el sentido de incluir aquella parte del edificio ocupada por Dinet con anterioridad al contrato celebrado con los esposos demandantes. Continúa alegando el demandado que los subarrendatarios están impedidos de reclamar daños por incumplimiento del contrato, porque en la fecha en que según la demanda el demandado había infringido el contrato, ya lo habían infringido los demandantes dejando de constituir la fianza a que se obligaron en virtud del referido contrato. Acordaron las partes que Consuelo Carazo de Glover debía ser fiadora solidaria y principal pagadora del cumplimiento por parte de los subarrendatarios de todas y cada una de las obligaciones por los mismos contraídas, renunciando dicha Consuelo Carazo de Glover al beneficio de excusión y comprometiendo sus bienes presentes y futuros al fiel cumplimiento de la obligación. Y dicha señora en ningún momento constituyó la fianza convenida en favor del demandado.

La corte inferior declaró sin lugar la demanda, y resolviendo la contrademanda decretó la resolución del contrato de subarrendamiento, sin especial condenación de costas.

Alegan los apelantes que la corte inferior erró al rechazar como evidencia de los actores el contrato ofrecido por ellos, atribuyéndole impropiamente y en desacuerdo con el mismo documento, que no está firmado ni sellado por el notario ni tiene adherido el sello de rentas internas que corresponde pagar por cada *affidavit* o declaración de autenticidad.

También se alega que la corte inferior erró al exigir a los apelantes la presentación del documento original del contrato, cuando rechazó una copia al carbón del mismo, y al admitir sólo condicionalmente, luego de haberlo rechazado, el contrato ofrecido por los actores apelantes.

Éstos son los cuatro primeros motivos de error señalados por los apelantes al impugnar la sentencia del tribunal inferior.

■ No surge de los autos que los apelantes tomaran excepción a la resolución de la corte, si es que ésta en realidad se negó a admitir la evidencia por ellos ofrecida. Los referidos apelantes ofrecieron como prueba una copia del contrato de subarrendamiento. El demandado se opuso a la admisión de la copia, entre otras razones por aparecer en la misma una firma que no se ha puesto en el original y que constituye una falsificación, y por carecer del sello notarial. Con respecto a este particular, tomamos de la transcripción de evidencia lo siguiente:

"Juez: El original es un documento público suscrito ante notario. Si esta copia en carbón apareciera en ella la firma del Notario con su sello de rentas internas y sello notarial, entonces podría admitirse. Pero en este caso aparece que el Notario no autoriza esta copia.

"Dte. Tiene el sello notarial y la firma del Notario.

"Juez: Pero no tiene el sello notarial ni está cancelado el sello de rentas internas. En estas condiciones la corte tiene que exigir el documento que fué originalmente suscrito ante Notario.

"Dte. ¿La parte demandada, dice que tiene el original?

"Ddo. Sí, señor, a disposición de S. S. Yo lo voy a poner a disposición de la parte contraria."

Presentaron entonces los demandantes como prueba el contrato original, que fué admitido, y al insistir en presen-

tar también la copia, se opuso nuevamente la parte demandada. Tomamos de la transcripción de evidencia lo siguiente:

"Ddo. Me opongo. Tenemos el documento original que se ha presentado y admitido a los efectos de probar las bases del contrato. Se viene ahora con un documento que se dice es una copia de aquél. Si la parte contraria entiende que aquél ha sido falsificado y es a los efectos de probar algún extremo, a ese respecto entonces, no tendríamos inconveniente en que se presente.

"Dte. Es a fin de probar alguna anormalidad.

"Ddo. Entonces está bien.

"Juez: La corte lo acepta con ese solo objeto y lo marca *Exhibit* núm. 2 de la parte demandante."

Como se ve, en ningún momento aparecen los demandantes tomando excepción a la resolución de la corte, que aceptó la copia del contrato como prueba en la forma sugerida por los propios demandantes. La ausencia de excepción a la resolución del tribunal inferior y la conducta de los demandantes impiden que señalen ahora como errores actuaciones por ellos sugeridas y con las cuales estuvieron conformes. Deben desestimarse los errores apuntados.

Comentando esta evidencia, presentada y admitida para probar alguna anormalidad, de acuerdo con la sugestión de los demandantes, dijo la corte inferior:

"Una y otra parte están de acuerdo en que la prestación de la fianza por parte de los demandantes fué una condición esencial del contrato, pero, mientras el demandado asegura que los demandantes nunca prestaron la fianza en cuestión, éstos tratan de probar lo contrario presentando en evidencia una copia del contrato de subarrendamiento, en la que aparece estampada la firma de la fiadora Consuelo Carazo de Glover.

"En el contrato original, sin embargo, que fué el que permaneció todo el tiempo en poder del demandado, no aparece la firma de doña Consuelo Carazo de Glover, y aparece tachado su nombre en la certificación que al pie de dichas firmas hace el notario al efecto de haberse suscrito ante él dicho contrato. De modo, que hay una discrepancia entre el contrato original, que lleva estampado el sello del notario y cancelado el sello de rentas internas, y la copia

que fué entregada a los demandantes y en la que no se canceló sello de rentas internas.

"Los demandantes tratan de explicar esta discrepancia, declarando que el contrato se redactó en el mes de noviembre de 1931, y que para esa fecha tanto la demandante, doña Luz Carazo, como su hermana doña Consuelo, firmaron el contrato, no habiendo firmado el original doña Consuelo, por haberle indicado el notario que .era suficiente con que firmase una copia. El abogado, Sr. Soto, en cuya presencia se firmó el contrato, asegura que los contratantes firmaron el documento, pero que no estaba presente la señora Consuelo Carazo de Glover, no recordando siquiera haberla visto alguna vez en su oficina.

"La explicación que ofrecen los demandantes no nos satisface. No podemos concebir que pueda haber un notario tan ignorante que crea que la firma de un fiador sea innecesaria en el contrato original de subarrendamiento que generalmente se entrega, como se entregó en este caso al subarrendador, en cuyo beneficio se presta la finza. Podría aceptarse que la firma de la fiadora fuese innecesaria en la copia que habría de entregarse al subarrendatario, ya que la fianza no se presta en beneficio suyo, y por consiguiente, no tiene interés en la obligación que contrae la fiadora. Además, si la demandante y la fiadora estuvieron en el mismo acto en la oficina del notario, y la demandante firmó la copia y el original, no vemos qué fin se perseguía, qué gran trabajo se evitaba a la fiadora con que sólo diese una firma en vez de dos. Además, el ejemplar del contrato donde aparece la firma de la fiadora, estaba en poder de los demandantes. Si hubiese sido a la inversa, es decir, si la firma hubiese aparecido en la copia que estaba en poder del demandado, entonces tal circunstancia le obligaría y estaría impedido de negar que la fiadora no había suscrito el documento, a menos que satisfactoriamente probase que dicha firma había sido puesta por otra persona sin su consentimiento."

Nos parecen atinados y lógicos los comentarios de la corte inferior sobre la copia del documento ofrecido como prueba por los demandantes. Se trata de un contrato privado que tiene carácter de auténtico, porque fué firmado ante un notario. El demandado conservó el original de ese contrato, que no contiene la firma de la Sra. Consuelo Carazo de Glover; los demandantes aparecen en posesión de una copia de ese contrato, conteniendo la firma de la señora referida. Es

raro que los demandantes se hayan reservado exclusivamente para sí la firma de la fiadora, que debió otorgarse a favor del demandado, dejando a éste huérfano de toda prueba para poder exigir la correspondiente responsabilidad en caso de que no se hubiesen cumplido las condiciones del contrato. Si como admiten las partes la prestación de la fianza fué una condición esencial del contrato, ¿cómo se explica que en el original del mismo no se estampase la firma de la fiadora para que el demandado estuviese en condiciones de quedar protegido en el futuro? El hecho de que el demandado firmase el documento sin aparecer en el mismo la firma de la garantizadora, resulta aclarado por su propio testimonio y la admisión de los demandantes. Cuando se preguntó al Dr. Goenaga si la garantía de la Sra. Consuelo Carazo de Glover era una condición del contrato, los demandantes admitieron que sí, añadiendo el demandado que no lo hubiera firmado si no se hubiera convenido eso. En vista de esta admisión no se continuó interrogando al testigo.

■ La corte inferior conviene con los demandantes que el demandado infringió la cláusula novena del contrato, al permitir que en el edificio se arrendase un local al Sr. Galiñanes para establecer allí un negocio similar al de ellos. Dicha cláusula novena dice así:

"Se hace constar por medio de este contrato que el subarrendador no dedicará ninguna parte de este edificio al negocio de cafetín, restaurante, repostería u otro negocio similar."

El demandado se defiende alegando que cuando contrató con los demandantes ya había subarrendado la parte del edificio donde se estableció el negocio referido. No es de suponerse que los demandantes hubiesen aceptado la cláusula novena, admitiendo excepciones que hubiesen destruído el propósito que perseguían. Si el demandado contrajo una obligación que no estaba en condiciones de cumplir, no es aceptable la excusa de que la referida cláusula no debe interpretarse en el sentido de incluir aquella parte del edificio

ocupada con anterioridad al contrato de los demandantes. Luego de admitir la infracción del contrato por parte del demandado dice la corte inferior:

"No obstante haber llegado a la conclusión que hemos llegado de que el demandado infringió el contrato al permitir que se estableciese en el edificio la Fuente de Soda Galiñanes, como también hemos llegado a la conclusión de que los demandantes infringieron el contrato antes que el demandado al no prestar la fianza que ellos admiten era esencial en el contrato, tenemos que llegar a la conclusión de que los demandantes no tienen causa de acción contra el demandado, pues es un principio bien establecido en materia de obligaciones y contratos, que para que una parte pueda reclamar daños y perjuicios por incumplimiento de contrato, es indispensable que pruebe que él cumplió en todas sus partes con las obligaciones que a él le correspondían en virtud del contrato. Así lo ha resuelto nuestro Tribunal Supremo repetidas veces, especialmente en los casos de *Palacios* v. *Arzuaga,* 37 D.P.R. 289; *Portela* v. *P. R. American Tobacco Co.,* 4 D.P.R. 30 (2ª. ed.); y *Sucn. Iglesias* v. *Bolívar,* 11 D. P.R. 441."

La doctrina anteriormente expuesta está respaldada también por la jurisprudencia americana. En el caso de *Loudenback Fertilizer Co.* v. *Tennessee Phosphate Co.,* 61 L.R.A. 402, 407, la corte se expresó así:

"El demandante, de acuerdo con los hechos relacionados en la demanda, demuestra que fué el primero en quebrantar sustancialmente el contrato . . . . Si hay alguna doctrina bien establecida es aquella que sostiene que la parte que comete el primer quebrantamiento del contrato no puede iniciar una acción contra la otra por el incumplimiento subsecuente del mismo. El demandante no ha observado el contrato y no aduce excusa por su quebrantamiento. No demuestra, por lo tanto, un cumplimiento de su parte que le dé derecho a exigir que el demandado cumpla la suya o le pague daños y perjuicios por una subsecuente negativa a reconocer el contrato como si estuviese vigente."

Con respecto a la contrademanda, la corte inferior entiende que habiéndose demostrado que los demandantes habían infringido el contrato con anterioridad a la infracción cometida por el demandado, dejando de prestar la fianza que

ellos mismos admiten estaban obligados a dar, debe declararse rescindido el contrato. Cita el tribunal inferior la sentencia del Tribunal Supremo de España de 9 de julio de 1904, donde se sostiene que, faltando una de las partes contratantes a lo convenido, puede pedir la otra la resolución del contrato, sin que sirva para ello de obstáculo el que el demandante dejase también de cumplir después sus obligaciones, ya que la conducta del primero es la que motiva el derecho del segundo y le libera desde entonces de sus compromisos. La rescisión del contrato fué cosa convenida entre las partes, a elección del subarrendador, en el caso de que los subarrendatarios faltaren al cumplimiento de cualquiera de las cláusulas, condiciones y términos del mismo. También se convino que la fianza era un elemento esencial del contrato. El demandado declaró que no lo hubiera firmado si no se hubiese convenido eso. De modo, pues, que la resolución se rige **por** el mismo acuerdo de las partes, que constituye la ley del contrato.

*Debe confirmarse la sentencia apelada.*